UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>　　　Plaintiff, )<br>)<br>v. )<br>)<br>KELVIN MILLER, )<br>)<br>　　　Defendant. ) | No. S1- 4:09CR693 RWS |

**MEMORANDUM, ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The above matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). The Defendant filed several pretrial motions, including a motion to suppress seized evidence and statements. The undersigned set a hearing in this matter on November 30, 2011, however, on that date, the attorney for the United States requested a continuance inasmuch as it was his intention to file a superseding indictment. On that same date, the United States Attorney filed a superseding indictment, and an arraignment was held on December 6, 2011. The parties were directed to file any additional motions no later than December 16, 2011, and by order dated December 20, 2011, the undersigned set the evidentiary hearing on January 20, 2012. Further, the undersigned ordered a transcript of the hearing, and the transcript was filed on January 24, 2012.

**#82--Motion of Defendant for Discovery and Inspection and for Production of Favorable Evidence**

In this motion, the Defendant has requested approximately nine pages of requests for alleged Brady material, cross-examination material, exculpatory evidence, and information about informants and other witnesses. Taken to its ultimate conclusion, the requests would require the United States

to disclose all information that it has regarding each witness. The rule does not require the attorney for the United States to provide this material. See United States v. McMahan, 744 F.2d 647 (8th Cir. 1984); Pennsylvania v. Ritchie, 480 U.S. 39, 59 (1987). The undersigned notes that insofar as the Defendant's motion seeks production of materials and information required to be produced pursuant to Rule 16, Federal Rules of Criminal Procedure, it should be granted as to those documents and information. This information includes the following:

(1)     the United States shall disclose and make available for inspection, copying or photographing the following: any relevant written or recorded statements made by the Defendant or copies thereof within the possession, custody, or control of the United States, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the United States; that portion of any written record containing the substance of any relevant oral statement made by the Defendant, whether before or after arrest, in response to interrogation by any person then known to the Defendant to be an agent of the United States; and recorded testimony, if any, of the Defendant before a grand jury which relates to the offense charged. The attorney for the United States shall also disclose the substance of any other relevant oral statement made by the Defendant, whether before or after arrest, in response to interrogation by any person then known by the Defendant to be an agent of the United States if the attorney for the United States intends to use that statement at trial.

(2)     furnish the Defendant such copy of the Defendant's prior criminal record, if any, as is within the possession, custody, or control of the United States, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the United States;

(3) permit the Defendant to inspect and copy any books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody, or control of the United States, and which are material to the preparation of the Defendant's defense, or are intended for use by the United States as evidence in chief at the trial, or were obtained from or belong to the Defendant;

(4) permit the Defendant to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments, or copies thereof, which are in the possession, custody, or control of the United States, the existence of which is known, or by the exercise of due diligence may become known to the attorney for the United States, and which are material to the preparation of the defense, or are intended for use by the United States as evidence in chief at trial.

To the extent that the motion seeks early production of statements of witnesses or Jencks material, it should be denied. The United States is not required to disclose the names of its witnesses prior to the trial of the case. 18 U.S.C. § 3500; Rule 16(a)(2), Federal Rules of Criminal Procedure; United States v. Pelton, 578 F.2d 701, 717 (8th Cir. 1978). Although the United States sometimes chooses to disclose Jencks material prior to trial, it may not be compelled to do so. United States v. White, 750 F.2d 726 (8th Cir. 1984).

Regarding Brady and Giglio material, the attorney for the United States will be ordered to provide to the Defendant any evidence in its possession which is favorable to the Defendant and which is material to the guilt or innocence of the Defendant or to punishment. Brady v. Maryland, 373 U.S. 83 (1963). This includes evidence which may be used to impeach the testimony of witnesses for the United States. United States v. Bagley, 473 U.S. 667 (1985). With regard to

impeaching information, the United States shall provide to the Defendant the following material information, if any exists, to any person who it calls as a witness at trial of the case:

>    1. The prior criminal history of convictions of the witness;
>
>    2. Any consideration offered or given to the witness in exchange for his/her testimony and/or cooperation in the investigation of the case;
>
>    3. Any statement of the witness which relates to the subject matter about which he/she is to testify (Jencks Act Material);
>
>    4. Any direct or implied threats or coercion used to obtain the cooperation or testimony of the witness, and
>
>    5. Any other evidence which the United States has in its possession which, as stated above, is favorable to the Defendant and which is material to the guilt or innocence of the Defendant or to punishment.

The undersigned further notes that some of the specific requests made by the Defendant may not lead to admissible evidence and may not even exist. It should be noted that to the extent the motion seeks production of internal United States documents or other prosecution documents, it should be denied. Further, the attorney for the United States will provide to the Defendant any and all recorded statements or other interception of the Defendant whether by consent or otherwise.

To the extent the Defendant's motion seeks disclosure of the matters ordered disclosed above, it should be granted. In all other respects, it should be denied. United States v. Davis, 752 F.2d 963, 976 (5th Cir. 1984).

Therefore, Defendant's motion should be granted in part and denied in part consistent with the above.

### #84--Defendant's Motion to Disclose the Identification of Informant

The attorney for the United States disclosed the name of the informant at the hearing on the motion to suppress. Therefore, this motion should be denied as moot.

### #85--Defendant's Motion for Disclosure of Possible Rule 404(b) Evidence

The Defendant in this motion requests that he be given notice of any evidence which the United States intends to present at trial of other crimes, wrongs, or acts which would be allegedly admissible at trial pursuant to Rule 404(b), Federal Rules of Criminal Procedure. Pursuant to that rule, this evidence is admissible, if at all, for specific purposes stated in the rule. Also stated in the rule is that, "Upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses the pretrial notice on good cause, of the general nature of any such evidence it intends to introduce at trial." Rule 404(b), Fed. R. Crim. P.

Therefore, the Defendant having requested this information, the undersigned concludes that the United States must provide to the Defendant the general nature of any evidence it intends to attempt to introduce under Rule 404(b), Federal Rules of Criminal Procedure. Therefore, the Defendant's motion should be granted, and it is hereby ordered that the attorney for the United States shall forthwith provide to the Defendant the general nature of the evidence of other crimes, wrongs, or acts which it intends to attempt to introduce at trial.

### #86--Defendant's Motion for Severance of Counts and Separate Trial on Felon in Possession Case

The Defendant claims he is prejudiced by the joinder of the felon in possession counts with the distribution of heroin counts. He states that the fact that the jury will learn that he is a convicted felon will prejudice him in defending the drug dealing counts.

Initially, the undersigned notes that offenses may be joined under Rule 8(a), if the offenses are of the same or similar character or constitute parts of a common scheme or plan. Moreover, drug dealing and felon in possession of a firearm are ordinarily joinable because weapons are considered part and parcel of the drug business. See United States v. Stokes, 211 F.3d 1039 (7th Cir. 2000). Further, in the case now at bar, the guns that make up the felon in possession counts are directly involved in the Defendant's drug-dealing operation. The rifle with the extra long clip which was fully loaded with fifty rounds of ammunition was displayed to the confidential informant along with several other weapons during one of the drug transactions. Further, on other occasions, the Defendant offered to sell to the confidential informant an assault rifle. In addition, one of the residents of the Tucker apartment told the agents that the Defendant placed a firearm with an extra long clip in the apartment for the Defendant's and the apartment's protection, and that the Defendant used the apartment as a base of operations from which to sell drugs. Thus, along with the fact that felon in possession and drug offenses are usually related, the facts of this case reveal that the Defendant's use of weapons was a part of his drug operation and used to protect him during the drug sales. Thus, the guns, in and of themselves, are likely admissible in the drug case alone.

As to relief from prejudicial joinder under Rule 14, Federal Rules of Criminal Procedure, the Defendant's motion also fails under this standard. In United States v. Felici, 54 F.3d 504 (8th Cir. 1995) (a case similar to the one now at bar), law enforcement officers received information that Felici was involved in drug trafficking, and arranged for undercover purchases of methamphetamine from him by a confidential informant. After the purchases were made, a search warrant was executed on the Defendant's residence, and approximately a half pound of methamphetamine contained in bags was seized from the residence. The search also uncovered numerous firearms, and a significant

6

amount of money in cash. The Defendant was indicted and charged with drug trafficking and being a felon in possession of firearms. Felici claimed that the joinder of those charges allowed the jury to hear otherwise inadmissible evidence of his prior convictions. In holding that the district court refusal to grant a severance was correct, the Court stated as follows:

> Federal Rule of Criminal Procedure 14 allows a district court to order severance of a charged offense if it appears that a defendant is prejudiced by its joinder with other charged offenses. The decision of the district court will not be reversed absent a showing of abuse of discretion resulting in clear prejudice. . .

54 F.3d 504, 506.

In specifically rejecting the severance in this case, the Court went on to state as follows:

> Even if the evidence of Felici's prior convictions would not have been admissible in a trial on counts one through six, any possible prejudice from its admission in this case was lessened by the method of proof used. The government simply read a stipulation that he had been convicted of two state felonies in 1970. Nothing was introduced regarding the nature of the prior offenses. We have previously found this practice to be proper. . .We conclude that the district court did not abuse its discretion in denying Felici's motion to sever count seven.

54 F.3d 504, 506. For similar results see United States v. Brown, 33 F.3d 1002, 1005 (8th Cir. 1994); United States v. Williams, 923 F.2d 76 (8th Cir. 1991).

In addition, several other circuits have upheld this procedure as well as holding that instructions to a jury telling them not to consider a felony conviction in any other counts and to consider the evidence separately, also mitigates the prejudice to such an extent that the counts should not be severed. See United States v. Stokes, supra; United States v. Hackley, 662 F.3d 671 (4th Cir. 2011); United States v. Richardson, 515 F.3d 74 (lst Cir. 2008); United States v. Hinds, 435 Fed. Appx. 832 (11th Cir. 2011).

7

Based on the above, the undersigned concludes there are no grounds at the present time to sever the felon in possession counts from the drug trafficking counts. Therefore, the Defendant's motion to sever should be denied.

#83--**Defendant's Motion to Suppress Seized Evidence and Statements**

Based upon the evidence adduced at the hearing in this matter as well as a review of the transcript of the proceedings, the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

On July 27, 2009, DEA Agent John McGarry filed applications before a United States Magistrate Judge requesting that warrants be issued to search 2509 Marcus Avenue, and 1605 South Tucker, Apartment B, in the City of St. Louis. The affidavit attached to the application for each warrant was identical, and purported to state probable cause to support the search of each premises. The common affidavit stated in pertinent part as follows:

> Some time in 2009, DEA and SLMPD developed a confidential informant who told the agents that Kelvin Miller was selling heroin from 1605 South Tucker in St. Louis, Missouri. The confidential informant has previously provided reliable information to police officers and agents, and was providing this information to obtain the benefit of a reduced sentence on a misdemeanor stealing case pending in state court. This confidential informant told the agents that the informant had recently purchased heroin from the defendant Kelvin Miller. This purchase took place at an apartment he controls at 1605 South Tucker, Apartment B. The informant also said that Miller maintains heroin and weapons at his own house at 2509 Marcus in the City of St. Louis. On June 4, 2009, DEA directed the confidential informant

to set up a purchase of heroin from Miller. The confidential informant contacted Miller by telephone to set up a location to purchase heroin from the defendant. DEA agents, with the confidential informant's knowledge, recorded this phone call with the defendant. The confidential informant was told by the defendant to meet him at a specific time at 1605 South Tucker. The informant was provided $500 in cash by the agents, and also provided a KEL recording/monitoring device with which to record the sale. The agents drove the confidential informant to 1605 South Tucker, and observed the defendant meet the confidential informant at the front door. They heard the defendant deliver crack cocaine to the confidential informant. They also heard the defendant offer to sell the confidential informant an Uzi firearm. During this transaction, the defendant had to leave the Tucker apartment to go to a second location to obtain more heroin. They observed him leave and return to the Tucker address wherein he delivered more heroin to the informant.

On June 17, 2009, the agents again had the confidential informant set up a $1,400 purchase of heroin from the defendant. After phone calls between the informant and the defendant, the informant was told to meet the defendant at the Tucker apartment. The confidential informant was again provided with $1,400 in cash and a KEL recording device. The informant entered the apartment and was met by a co-conspirator of the defendant who occupied the apartment. This person called the defendant on the phone, and he told the co-conspirator that he was "on the way." The defendant arrived shortly at the apartment with the heroin, and sold it to the confidential informant.

Further, on June 25, 2009, the confidential informant again arranged to purchase a quarter ounce of heroin from the defendant for $1,400. When the informant arrived at the Tucker

9

address with the money, the defendant was not there, and the informant was met by one of the residents. The resident told the informant that the defendant was on his way to the apartment. The defendant was observed by the agents arriving at the Tucker address, and they overheard him sell the informant a portion of the heroin explaining that he had to go to a second location to get the rest of the heroin to fill out the order. The defendant then left the location in a vehicle, and was observed by the agents traveling back to his home at 2509 Marcus. The agents observed him go inside 2509 Marcus, come out of that address, and drive back to the Tucker address. When the defendant arrived at the Tucker address, he made contact with the informant who was waiting at Tucker, and immediately sold the heroin to the informant.

On July 24, 2009, the DEA agents again had the informant arrange a fourth controlled purchase of one quarter ounce of heroin from Miller. On this date, the agents established a surveillance both on the residence at 1605 South Tucker as well as the defendant's home address at 2509 Marcus. The agents first observed Miller and a female arrive at 1605 South Tucker in a Chevy Tahoe, park their car and enter the apartment. Shortly after that, the agents, having equipped the informant with a KEL recording device and given him $1,400 in pre-recorded funds, observed the informant enter the apartment. They overheard Miller display several firearms to the informant, to include a carbine rifle with a fifty-round magazine which was concealed under a couch, a .40 caliber semi-automatic handgun concealed inside a bedroom closet, and a .380 caliber semi-automatic handgun. The defendant offered to sell assault rifles to the informant. Miller then left the apartment with the female in the Tahoe automobile ostensibly to obtain heroin from the second location. Miller was followed to 2509

Marcus, where they observed Miller enter the apartment and stay for approximately thirty minutes. He then exited the apartment, and departed in the Tahoe and was followed to 1605 South Tucker. Miller immediately entered the apartment and sold the heroin to the informant.

The informant, as he did on all occasions, returned directly to a pre-arranged location to meet the DEA agents. Because the defendant had gone to the Marcus address on several occasions, the agents fully debriefed the informant about the 2509 Marcus address. The informant told the agents that he has accompanied Miller to this location on two occasions in the previous fourteen days, and on both occasions, Miller had a key to enter the apartment and retrieved heroin from the Marcus address for distribution to a customer.

The agents summarized their affidavit as follows:

In sum, this investigation has resulted in four controlled purchases of heroin from Kelvin Miller during the past seven weeks. Each purchase involved the same confidential source who had previously proven reliable, and each one occurred inside 1605 South Tucker, Apartment B. In each case, the CS purchased heroin directly from Miller, and in each case an KEL digital audio recording device corroborates the account provided by the CS in debriefing immediately following the transaction. In all four cases, Miller arrived at the location from a remote location prior to producing the heroin to the CS  On the two most recent occasions, the surveillance team successfully followed Miller to the remote location from which he had told the CS he intended to procure the heroin. The team also successfully followed Miller directly back to the South Tucker location, on both instances, and in both instances Miller immediately provided the CS with the larger quantities of heroin. In both these cases, the remote location where Miller proved to be storing his larger quantities of heroin for distribution turned out to be 2509 Marcus, where he is the utility subscriber. In addition, the CS has stated that he has accompanied Miller to the 2509 Marcus residence on two occasions within the last fourteen days, and on both occasions Miller told the CS that he had retrieved heroin from that location. Furthermore, Miller has stated that he is able to provide firearms, including assault weapons, to the CS, and the CS has seen firearms present in the South Tucker location.

See Government's Exhibit 2.

Based on the above affidavits, Judge Frederick R. Buckles issued warrants to search 1605 South Tucker, Apartment B, and 2509 Marcus for drugs, firearms, indicia of residency, drug paraphernalia, and drug records.

Phil Menendez is a sergeant with the St. Louis Metropolitan Police Department. Menendez's informant was the informant that DEA and the St. Louis Metropolitan Police Department used to purchase drugs from Kelvin Miller. Menendez was present on July 27, 2009 when Agent McGarry received a warrant from a magistrate judge to search 1605 South Tucker, Apartment B. Menendez went with agents from DEA and police officers to the Tucker address on July 31, 2009, and executed the warrant. After knocking and announcing their purpose and being denied entrance to the apartment, the agents and officers forced entry into the apartment. There they encountered three adults and two juveniles. They conducted a thorough search of the apartment, seizing a .22 carbine long-barreled rifle from in the living room underneath the couch. The rifle had an extended clip, and the clip was loaded with 50 rounds of ammunition. In the living room, also underneath the same couch, they seized a clear plastic bag containing several capsules of heroin. In the kitchen, they seized a coffee grinder that appeared to contain a residue of heroin, and also seized sandwich bags which they believed were used for the packaging of heroin. Also from this same area, they seized several empty capsules which they believed could be used to package heroin. Menendez also testified that during the course of the investigation, they overheard Miller attempting to sell several weapons to the informant. Miller discussed the weapons and displayed weapons to the informant on at least one occasion. When a resident of the apartment, at 1605 South Tucker, was questioned during the execution of the search warrant, this resident told Menendez that the rifle with the extended clip was

placed in the apartment by Miller for protection of people in the apartment. This resident told also Menendez that Miller was using the apartment as a base to sell heroin.

Simultaneously with the execution of this search warrant, DEA agents executed the warrant at 2509 Marcus. Agents and members of the St. Louis police department went to the Marcus address, knocked and announced their presence, and were denied admission because no one was at the apartment. They forced entry and searched the apartment. They seized several bottles of pills from the bedroom, paperwork, legal mail addressed to Kelvin Miller, a digital scale, a Smith and Wesson .44 Magnum fully loaded revolver located underneath the dresser next to the bed, a piece of mail from Ameren UE addressed to Kelvin Miller at the address, and a Nextel telephone.

## Conclusions of Law

For a search warrant to be valid, it must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that the evidence, instrumentalities, or fruits of a crime or contraband may be found at the place to be searched. Johnson v. United States, 333 U.S. 10 (1948); Warden v. Hayden, 387 U.S. 294 (1967). The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions.

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . .

Brinegar v. United States, 338 U.S. 160, 175 (1949).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual context--not readily or even usefully reduced to a neat set of legal rules." See Illinois v. Gates, 462 U.S. 213, 232 (1983). Further, probable cause in an affidavit "must be weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law

13

enforcement." Illinois v. Gates, at 232. Probable cause may be based on the totality of the circumstances present. All that need be shown for probable cause to search is that there be a "fair probability" that contraband or evidence of a crime would be found at the premises to be searched. See Illinois v. Gates, supra. It is also true that courts often find probable cause when there is no direct evidence that drugs or other contraband, such as money, were stored at a defendant's premises. Nevertheless, courts have upheld search warrants as based on probable cause on the basis of inferences involved from the facts in the cases. See United States v. Grossman, 400 F.3d 212 (4th Cir. 2005). Further, the uncorroborated word of a reliable informant, without more, is sufficient to provide probable cause for the issuance of a search warrant. As the Court stated in United States v. Pressley, 978 F.2d 1026 (8th Cir. 1992):

> It is well settled that the statements of a reliable informant can provide, by themselves, a sufficient basis for the issuance of a warrant.

978 F.2d 1026, 1027. See also United States v. Sherrill, 27 F.3d 344 (8th Cir. 1994).

Given the above, the undersigned concludes that the warrants in this case more than meet the standard of probable cause for the search of both the Tucker and the Marcus premises. In the case of each premises, the evidence shows that the Defendant was storing drugs at the Marcus premises and selling drugs from the Tucker premises over a significant period of time. Further, the informant, who had been reliable in the past, stated that he had been to the Marcus address a few days before the search warrant, and the Defendant obtained heroin from the Marcus address. In addition, the informant conducted a series of four drug purchases at the Tucker address, the latest one being only a few days before the warrant was issued. Further, the informant was corroborated because the conversations were recorded by a KEL recorder and monitored by the agents. The agents observed him entering Tucker at the time of the transactions, and meeting with the Defendant. In addition, they

observed the Defendant enter the Marcus address and return to the Tucker address after retrieving what was apparently heroin from the Marcus address. Thus, the informant's information was fully corroborated by the agents. Therefore, the undersigned concludes that there was ample probable cause to search both the Tucker and Marcus addresses for drugs and/or weapons. Therefore, the evidence should not be suppressed.

Finally, at the hearing in this matter, the Defendant acknowledged that any statements obtained through the confidential informant by way of the digital recording device were obtained by and with the consent of the confidential informant, and were not being challenged.

Therefore, as to the Defendant's statements, they should not be suppressed.

## Conclusion

Therefore, the Defendant's motion to suppress seized evidence and statements should be denied.

* * *

In accordance with the above,

**IT IS HEREBY ORDERED** that the Motion of Defendant for Discovery and Inspection and for Production of Favorable Evidence [Doc. #82] be **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Disclose the Identification of Informant [Doc. #84] be **denied as moot**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Disclosure of Possible Rule 404(b) Evidence [Doc. #85] be **granted**.

**IT IS FINALLY ORDERED** that Defendant's Motion for Severance of Counts and Separate Trial on Felon in Possession Case [Doc. #86] be **denied**.

15

Further,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Seized Evidence and Statements [Doc. #83] be **denied**.

Further, the parties are advised that they have fourteen (14) days, in which to file written objections to this recommendation and determination. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

                                      /s/ Terry I. Adelman
                          UNITED STATES MAGISTRATE JUDGE

Dated this  9th  day of February, 2012.